IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 7:22-cr-00016 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WAYNYEAZ CRUMP, | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendant. | ) | |

Defendant Waynyeaz Crump ("Defendant") moves to revoke the United States Magistrate Judge's order of detention pending trial. (*See* ECF No. 31.) As explained below, the court concludes that there are no conditions of release that "will reasonably assure . . . the safety of any other person and the community . . ." if Defendant is released prior to trial. 18 U.S.C. § 3142(e)(1). The court will therefore deny Defendant's motion and bid for pretrial release.

### I. BACKGROUND

In February 2022, a grand jury charged Defendant with two counts of possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C). At Defendant's initial appearance, the government moved for detention pending trial, and the Magistrate Judge conducted an evidentiary hearing. The government called FBI Special Agent ("SA") Joshua Bills to summarize the evidence underlying the drug charges and other evidence pertinent to pretrial detention.

In sum, SA Bills testified that, on two occasions in late 2021, officers from the regional High Intensity Drug Trafficking Area ("HIDTA") task force utilized a confidential informant ("CI") to conduct two controlled purchases of a substance containing heroin and fentanyl

from Defendant. (Bond Hr'g Tr. 14:3-16:19, 17:8-18:20, Feb. 24, 2022 [ECF No. 29].) These controlled purchases were audio and video recorded, and SA Bills testified that he positively identified Defendant in the recordings. SA Bills further testified that on January 4, 2022, law enforcement, utilizing the same CI, arranged to purchase a significant quantity of methamphetamine from Defendant. (*Id.* at 21:18-23.) During the ensuing transaction, officers arrested Defendant; at the time of his arrest, he was in possession of approximately 110 grams of methamphetamine and a small quantity of heroin. (*Id.* at 22:22-25.) Following his arrest, Defendant apparently waived his *Miranda* rights and agreed to be interviewed. Defendant told the officers that he sold "multiple ounces" of methamphetamine and heroin per week.[1] (*Id.* at 23:10-15.)

HIDTA officers initially brought charges in state court after the January 4 encounter, and Defendant was released on bond. While he was on bond, the government secured the instant federal indictment and an arrest warrant. SA Bills testified that officers arrested Defendant on the federal charges on February 22, 2022, after they observed him in a vehicle with an individual who appeared to be conducting hand-to-hand drug transactions. (*Id.* at 24:3-11.) At the time of his arrest on these federal charges, Defendant was in possession of approximately $700 in cash. (*Id.* at 24:17–18.) SA Bills also testified that Defendant has admitted to "being friends with and associating with and purchasing drugs from known gang members." (*Id.* at 24:23–25.) SA Bills also testified that the government has developed

---

[1] The government, to date, has not charged Defendant with a controlled substance offense related to the January 4 methamphetamine deal.

evidence directly tying Defendant to a fatal opioid overdose, and that this investigation is ongoing. (*Id.* at 26:12-21.)

In addition to the testimony of SA Bills, the court considers that Defendant's prior criminal history includes felony convictions for possession of a controlled substance (2018) and making a false statement on a firearm consent form (2019). (*See* ECF No. 11, at 4–5.) Also in 2019, he was convicted of failing to appear on an unrelated misdemeanor offense. (*Id.* at 5.) And it is undisputed that following his arrest on February 22, Defendant tested positive for oxycodone and admitted to using this substance and experiencing withdrawal symptoms.

In support of his petition for release, Defendant, who is 25 years old, presented evidence that he is a lifelong resident of Roanoke who has lived with his 62-year-old grandmother, Evelyn Cole, since his early childhood. Ms. Cole, who is a certified nursing assistant and has no prior criminal record, appeared at Defendant's bond hearing and represented to the court that she was willing to serve as a third-party custodian and abide by any bond conditions imposed by the court.[2] Defendant also avers that at the time of his arrest on the federal indictment, he was gainfully employed and was coparenting his three-year-old son.

## II. STANDARD OF REVIEW

When a magistrate judge orders the detention of a criminal defendant, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The district court reviews the original

---

[2] Ms. Cole appeared via video conference, but technical difficulties precluded her from testifying directly. Defendant's counsel proffered what Ms. Cole would say, and the court does not doubt counsel's representations.

detention order *de novo*. *See United States v. Sprouse,* No. 3:12cr200, 2012 WL 2366455, at \*2 (W.D.N.C. June 21, 2012). But the reviewing court may rely on the record from the original bond hearing and is not required to conduct a second evidentiary hearing. *See United States v. Jackson*, No. 7:19-cr-126, 2019 WL 4689144, at \*1 (E.D.N.C. Sept. 25, 2019). The court has carefully reviewed the record from the February 24, 2022, detention hearing and finds that a second hearing and additional oral argument would not aid its decision.

### III. ANALYSIS

Pretrial detention is appropriate if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person or the community." 18 U.S.C. § 3142(e)(1). In evaluating this, the court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his physical and mental condition and whether, at the time of the alleged offense, he was on pretrial release pending trial; and (4) the nature and seriousness of the danger that the defendant's release would present to any person. *Id.* § 3142(g). Because there is probable cause to believe, based on the grand jury's return of an indictment, that Defendant has committed a violation of 21 U.S.C. § 841(a)(1), a rebuttable presumption arises that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

"[T]he presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release

conditions." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). But this presumption only places a burden of production on a defendant; the government still carries the burden of persuasion. *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (collecting cases). "A defendant satisfies his burden of production when he 'comes forward with evidence that he does not pose a danger to the community or a risk of flight.'" *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Although a defendant's burden in this respect is not onerous, he must put forth some evidence to rebut the presumption of dangerousness. *Id.* If a defendant satisfies this burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by district court." *Mercedes*, 254 F.3d at 436.

Based on the evidence presented at the detention hearing, the court finds that the government has carried its burden of establishing, by clear and convincing evidence, that no conditions of release would assure the safety of the community, and that the Magistrate Judge was correct in ordering the Defendant detained pending trial. The charged offenses—possession with intent to distribute heroin laced with fentanyl—are very serious. Fentanyl, a synthetic opioid 80–100 times stronger than morphine, is highly toxic and largely responsible for the precipitous increase in fatal drug overdoses in the United States (and Virginia) over the past several years.[3] Because Defendant has a prior drug-trafficking conviction, if the government files an information pursuant to 21 U.S.C. § 851, it can raise the maximum possible penalty for these charged offenses from 20 years to 30 years of imprisonment.

---

[3] *See Opioid Facts*, U.S. Dep't. of Just., https://justice.gov/opioidawareness/opioid-facts, (last updated Feb. 10, 2022).

Although Defendant is presumed innocent of these offenses, the evidence against him is very strong. As noted above, he was captured on audio and video distributing heroin and fentanyl to a confidential informant, and he later confessed to dealing significant quantities of the same (as well as methamphetamine) on a regular basis.

Defendant also has a history of engaging in drug-trafficking. In 2018, he was convicted of a felony drug charge in state court. And although the government has not filed state charges related to his January 4, 2022, arrest, he was found in possession of more than 100 grams of methamphetamine. Defendant tested positive for opioids following his arrest on the federal charges, and he later admitted to using these substances. The court also cannot overlook that at the time of his arrest on the federal charges—and while he was on bond for the state drug charge—law enforcement agents witnessed Defendant in a vehicle with an individual who appeared to be engaging in hand-to-hand drug transactions. Moreover, Defendant apparently has admitted to associating with and selling narcotics to local gang members.

Defendant contends that he should be released pending trial because he has rebutted the presumption in favor of pretrial detention, and the government has failed to establish, by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.[4] Specifically, Defendant argues that his proposed bond package—continuing to live with his grandmother while on electronic monitoring—vitiates the government's case in favor of detention. The court is not persuaded.

---

[4] The government concedes that Defendant does not present a risk of flight, so the court only considers dangerousness as a basis for pretrial detention.

Defendant has lived with his grandmother for most of his life, including when he is alleged to have committed the instant drug offenses and while using (and likely becoming addicted to) illegal opioids. Thus, the court finds that this proposal does not mitigate the significant risk that Defendant will continue to engage in these illegal activities, posing a grave risk to the community and himself if he were released. In sum, considering the pertinent § 3142(g) factors, as summarized above, as well as the presumption attendant to serious drug-trafficking cases, the court concludes that the government has established by clear and convincing evidence that Defendant would pose a danger to the community and himself if he were released pending trial.

## IV. CONCLUSION

For these reasons, the court will deny Defendant's motion and order him detained pending trial. The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 15th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE